# In the United States Court of Federal Claims

No. 21-1095
(Filed Under Seal: August 31, 2021)
Reissued: September 15, 2021[1]

|  |  |
|---|---|
| XL ASSOCIATES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| OST, INC., | ) ) |
| Defendant-Intervenor. | ) ) |

*Shomari Brock Wade*, Greenberg Traurig, LLP, Washington, DC, for plaintiff.

*Daniel Hoffman*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*Craig Alan Holman*, Arnold & Porter Kaye Scholer, LLP, Washington, DC, for defendant-intervenor.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

This post-award bid protest is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, XL Associates, Inc. ("XLA"), challenges the evaluation of offerors and the award decision issued by the United States Department of Homeland Security, Federal Emergency Management Agency ("FEMA" or "Agency") for the procurement of National Flood Insurance Program standard operations support services under Solicitation No. 70FA6020R00000004 ("Solicitation"). Administrative Record 80 [hereinafter AR]. For the reasons set forth below, the Court denies plaintiff's Motion for Judgment on the Administrative Record and grants defendant's and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record.

---

[1] An unredacted version of this opinion was issued under seal on August 31, 2021. The parties were given an opportunity to propose redactions, but no such proposals were made.

## I. Background

### A. The Solicitation

On July 8, 2020, FEMA issued its original Solicitation for the procurement of standard insurance operations support for the National Flood Insurance Program ("NFIP"), administered through FEMA's Federal Insurance Division. AR 80. The Agency expects the awardee to provide insurance subject-matter expertise as well as standard business operations such as project management, underwriting support, claims support, flood disaster response support, correspondence support, field office support, publication and document assistance, and program support. AR 88. The Solicitation states that the basis of award will be best value, with a two-phase evaluation based on the following four factors listed in descending order of importance: Phase I: Factor 1 (Demonstrated Relevant Prior Experience); and Phase II: Factor 2 (Oral Presentation), Factor 3 (Price), and Factor 4 (Past Performance). AR 147–49.

Phase I, Factor 1 (Relevant Prior Experience) requires offerors to submit written submissions demonstrating "experience supporting the requirements complexity identified in the Standard Operations Statement of Work (SOW)." AR 141. In their submission, offerors must address three subfactors within Factor 1: (1) experience directly supporting the NFIP; (2) experience directly supporting the processing of flood insurance claims; and (3) experience implementing change management efforts. AR 139; *see also* AR 141. Submissions are evaluated under Factor 1 "holistically" across these three subfactors and offerors are assigned a rating based on the Agency's "confidence in the [o]fferor's ability to successfully perform the work." AR 149; *see also* AR 25. These ratings are: "High Confidence"; "Some Confidence"; and "Low Confidence." AR 25. As part of Phase I, Factor I, offerors are required to also submit written Letters of Commitment ("LOC") for any "major subcontractor" that is relied upon to meet evaluation criteria. AR 139.

Upon evaluating offerors' submissions under Factor 1, the Agency advises offerors with the highest ratings for Factor 1 to proceed to Phase II. AR 141. In Phase II submissions, offerors address the following factors: Factor 2 (Oral Presentation); Factor 3 (Price); and Factor 4 (Past Performance). AR 149. Factor 2 (Oral Presentation) is evaluated "holistically" across multiple subfactors and offerors are assigned ratings of: "High Confidence"; "Some Confidence"; or "Low Confidence." AR 149; *see also* AR 26–27; 142–43. For Factor 3 (Price), offerors complete an attached price template with labor rates. AR 140, 147; *see also* AR 150–54. The Solicitation states that each offeror's "total evaluated price will be derived from the price of the base period plus options periods." AR 147. Under Factor 4 (Past Performance), the Agency evaluates offerors for relevant past performance and assigns confidence ratings in the same manner as Factors 1 and 2. AR 148; *see also* AR 28. However, the Agency's evaluation of Factor 4 (Past Performance), unlike Factor 1 (Relevant Prior Experience), will not evaluate an offeror "favorably or unfavorably if it lacks relevant past performance." AR 148; *see also* AR 28.

The Solicitation requires FEMA to use the trade-off evaluation process to evaluate each proposal in accordance with the evaluation criteria. AR 149. Under these terms, FEMA makes

the appropriate "trade-off decisions" between the merits of each offeror's proposal to award a "single contract to the responsible Offeror whose proposal represents the best value." AR 147.

### B. Evaluation

The evaluation process involves a two-tiered approach consisting of a Source Selection Evaluation Board ("SSEB") and the Source Selection Authority ("SSA"). AR 7. The SSEB comprehensively evaluates each proposal in accordance with the Source Selection Plan and the evaluation factors contained in the Solicitation and documents its findings in a Technical Evaluation Consensus Report. AR 9, 1274. The SSEB comprises three Source Selection Evaluation Teams: (1) a Technical Evaluation Team to evaluate Factor 1 and Factor 2, (2) a Past Performance Evaluation Team to evaluate Factor 4, and (3) a Price Evaluation Team to evaluate Factor 3. AR 16. The SSA makes the final source selection decision considering the evaluation in the Technical Evaluation Consensus Report and issues the Source Selection Decision Document ("SSDD"). AR 7, 1326.

On September 29, 2020, the Agency completed its evaluation of all proposals. AR 532. After the Agency initiated corrective action, as detailed below, the Agency performed a reevaluation of the offerors' proposals. AR 994. On March 2, 2021, the SSEB issued the Technical Evaluation Consensus Report and on March 3, 2021, the SSA issued the SSDD. AR 1274, 1329. The final evaluation ratings for OST and XLA are as follows:

| Offeror | Factor 1 Demonstrated Prior Experience | Factor 2 Oral Presentation | Factor 3 Price | Factor 4 Past Performance |
|---|---|---|---|---|
| OST | High Confidence | Some Confidence | $61,789,951.08 | Some Confidence |
| XLA | Some Confidence | High Confidence | $72,258,970.60 | High Confidence |

AR 1658. As a result of the corrective action, OST's Factor 1 rating changed from "Some Confidence" to "High Confidence." AR 1340. XLA's Factor 4 rating changed from "Some Confidence" to "High Confidence." AR 1340. Following the relative order of importance of each factor under the Solicitation, as well as the results of the Technical Evaluation Consensus Report, the SSA found OST's proposal represented the best value. AR 1341. Though plaintiff was rated higher in Factor 2 and Factor 4, "[b]ased upon the relative order of importance of the factors specified in the [S]olicitation, OST's superior technical merit for Factor 1 [was] considered more important than XLA's superior technical merit assigned for Factor 2." AR 1340. The SSA agreed with the SSEB that both offeror's prices were "fair and reasonable" but the "$10,469,019 price premium that would be incurred to award to XLA [was] considered significant and not warranted or consistent with the terms of the solicitation." AR 1338, 1340.

On March 5, 2021, FEMA notified plaintiff that it was not selected for award. AR 1342. On March 11, 2021, FEMA provided a written debriefing to plaintiff. AR 1658.

### C. Procedural History

On September 29, 2020, FEMA awarded the contract to plaintiff for a total contract value of $60,091,536.66. AR 532. On October 14, 2020, OST, the incumbent contractor, protested the

award before the Government Accountability Office ("GAO"). AR 575. On November 30, 2020, FEMA informed plaintiff that the GAO action had been dismissed, contingent on the Agency's corrective action. AR 994–95. On February 9, 2021, FEMA issued an amended Request For Proposals ("RFP"), revising the following: (1) Factor 2 (Oral Presentation) and (2) the pricing template. AR 1029–30. On February 12, 2021, FEMA issued another amendment to the RFP, once again revising the Scheduled Pricing Sheet. AR 1202. Plaintiff timely updated its proposal in response to both amendments. AR 1544. On February 22, 2021, FEMA terminated plaintiff's contract for the government's convenience. AR 1215–17. As a result, FEMA reevaluated the proposals. *See* AR 1274.

On March 22, 2021, plaintiff filed its Complaint with this Court, seeking declaratory and injunctive relief. *See* Complaint, ECF No. 1. On April 23, 2021, plaintiff filed its Motion for Judgment on the Administrative Record. *See* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 26 [hereinafter Pl.'s MJAR]. On May 14, 2021, defendant and defendant-intervenor filed their Cross-Motions for Judgment on the Administrative Record as well as their Responses to plaintiff's Motion for Judgment on the Administrative Record. *See* Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record, ECF No. 27 [hereinafter Def.'s CMJAR]; Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 29 [hereinafter Def.-Int.'s CMJAR]. On May 24, 2021, plaintiff filed its Reply in Support of its Motion for Judgment on the Administrative Record and Response to the Cross-Motions for Judgment on the Administrative Record. *See* Plaintiff's Reply and Response to Cross-Motions for Judgment on the Administrative Record, ECF No. 30 [hereinafter Pl.'s Reply]. On June 2, 2021, defendant and defendant-intervenor filed their Replies in Support of their Cross-Motions for Judgment on the Administrative Record. *See* Defendant's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 32; Defendant-Intervenor's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 31. The Court held oral argument on July 7, 2021. The parties' Motions are fully briefed and ripe for review.

## II.  Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which affords this Court with jurisdiction over bid protest actions. 28 U.S.C. § 1491(b). This Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency actions. *See* 28 U.S.C. § 1491(b)(4); *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Under APA standards, agency procurement actions may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

Under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), a party may file a motion for judgment on the administrative record for the court to assess whether an administrative body, given all disputed and undisputed facts in the record, acted in compliance with the legal standards governing the decision under review. *See Supreme Foodservice GmbH*

*v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006)). On a motion for judgment on the administrative record, the parties are limited to the Administrative Record, and the court makes findings of fact as if it were conducting a trial on a paper record. RCFC 52.1; *Bannum*, 404 F.3d at 1354. Looking to the Administrative Record, the court must determine whether a party has met its burden of proof based on the evidence in the record. *Bannum*, 404 F.3d at 1355.

When a protestor claims that an agency's decision violates a statute, regulation, or procedure, the protestor must show that the alleged violation was "clear and prejudicial." *Impresa*, 238 F.3d at 1333. The Court will "interfere with the government procurement process 'only in extremely limited circumstances.'" *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.-Fed. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989)). "If the court finds a reasonable basis for [an] agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). The court cannot substitute its judgment for that of an agency, even if reasonable minds could reach differing conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974).

### III.   Discussion

Plaintiff challenges the Agency's award to OST, Inc. ("OST" or "awardee"), arguing that the Agency made the following errors: (1) FEMA relied on unstated criteria in its evaluation; (2) FEMA arbitrarily assigned weaknesses to plaintiff's proposal while not giving credit for strengths; and (3) FEMA conducted flawed best value and price determinations.[2] *See generally* Pl.'s MJAR, ECF No. 26. Defendant and defendant-intervenor respond with the following: (1) plaintiff cannot demonstrate prejudice and does not have standing to bring this protest; (2) plaintiff's arguments are untimely because they contest the terms of the Solicitation[3]; and (3) FEMA properly exercised its discretion in accordance with the Solicitation and provided a

---

[2]   Plaintiff also presented a conflict-of-interest claim that was subsequently withdrawn. *See* Plaintiff's Reply and Resp. to Cross-Motions for Judgment on the Administrative Record, ECF No. 30. Therefore, the Court does not address that claim in this Opinion.

[3]   Both defendant and defendant-intervenor argue that much of plaintiff's protest is untimely under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007). *See, e.g.*, Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record at 15–17, 21, ECF No. 27; Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record and Response to Plaintiff's Motion for Judgment on the Administrative Record at 2, 16, ECF No. 29. However, plaintiff does not allege any ambiguity or patent error in the Solicitation's terms. *See* Plaintiff's Reply and Response to Cross-Motions for Judgment on the Administrative Record at 6, ECF No. 30. As such, the waiver rule of *Blue & Gold* is inapplicable here.

procurement decision with an adequate rational basis. *See generally* Def.'s CMJAR, ECF No. 27; Def.-Int.'s CMJAR, ECF 29.

### D. Unstated Evaluation Criteria

"It is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation." *NEQ, LLC v. United States*, 88 Fed. Cl. 38, 47 (2009) (citing *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 386 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004)). As such, "[agencies] may not rely upon undisclosed evaluation criteria in evaluating proposals." *Id.* at 48 (citations omitted). However, "a solicitation need not identify each element to be considered by the agency during the course of the evaluation where such element is intrinsic to the stated factors." *Id.* (citations omitted); *see also Constellation W., Inc. v. United States*, 125 Fed. Cl. 505, 536 (2015). "[T]o prevail on an argument that an agency used an unstated evaluation criterion, a protester must show that: (i) 'the procuring agency used a significantly different basis in evaluating the proposals than was disclosed; and (ii) the protester was prejudiced as a result[.]'" *NEQ*, 56 Fed. Cl. at 48 (citation omitted).

1. Simultaneity

Plaintiff argues that FEMA applied unstated evaluation criteria under Factor 1 (Relevant Prior Experience). Specifically, plaintiff alleges that the Agency required offerors to "describe their experience managing day-to-day operations and disaster support operations *simultaneously*." Pl.'s MJAR at 14 (emphasis in original). As "XLA was not clear in describing their experience with managing day to day operations and disaster operations simultaneously," the Agency assigned XLA a significant weakness under Factor 1, Subfactor 1 (Experience Supporting NFIP). AR 1289. In response, defendant and defendant-intervenor state that the "simultaneity" evaluation criterion is both an explicit and intrinsic requirement of the Solicitation that was within the Agency's reasonable discretion to apply, and that the "simultaneity" requirement was expressly disclosed to plaintiff as part of corrective action. *See* Def.'s CMJAR at 18; Def.-Int.'s CMJAR at 17.

The Court does not believe FEMA applied an unstated evaluation criterion of simultaneity. The "simultaneous" requirement alleged by plaintiff comports with the terms of the Solicitation. The Solicitation instructs offerors that Factor 1 (Relevant Prior Experience) will be evaluated by determining how the offerors' prior experience "aligns with the requirements of the [Statement of Work ("SOW")]." AR 141. The SOW asks for the parallel performance of both day-to-day operations and disaster support operations, where the awardee should be able to support FEMA "potentially around the clock during disaster events," provide "procedures to maintain support during an emergency, including natural disasters and acts of terrorism," and "continue [standard operations] to the maximum extent possible under emergency circumstances." AR 160–62. Taken together, the Solicitation and the SOW require the Agency to evaluate an offeror's ability to simultaneously manage day-to-day operations and disaster support operations. As such, the Agency did not use a significantly different basis in evaluating the proposals than was disclosed. Therefore, the Court finds the Agency's evaluation consistent with the terms of the Solicitation.

2. Letter of Commitment

Plaintiff also argues that the Agency applied unstated criteria by requiring XLA to provide a Letter of Commitment ("LOC") for its subcontractor, BAC Adjusting ("BAC"). Pl.'s MJAR at 17. Plaintiff argues that "the Solicitation only requires a LOC for **major subcontractors**" and plaintiff "explained repeatedly in its revised proposal that BAC is 'a non-major subcontractor.'" *Id.* (emphasis in original). Without a LOC for BAC, FEMA's evaluation did not include BAC's experience as part of plaintiff's proposal, resulting in a weakness under Factor 1, Subfactor 2 (Experience Supporting the Processing of Flood Insurance Claims). AR 1297. Defendant and defendant-intervenor argue that the Agency did not deviate from the Solicitation by disregarding BAC's experience under Factor 1 and that plaintiff's argument amounts to mere disagreement with the Agency's interpretation of a "major subcontractor." *See* Def.'s CMJAR at 19; Def.-Int.'s CMJAR at 20.

The Court finds that FEMA acted within the terms of the Solicitation when it disregarded the experience of XLA's subcontractor, BAC. The Solicitation requires a written LOC for each "major subcontractor[]" as part of an offeror's demonstration of relevant prior experience under Factor 1. AR 139. Despite plaintiff's categorization of its subcontractor as a "non-major subcontractor," AR 1076, FEMA determined that BAC was a major subcontractor because of its involvement in supporting "day-to-day routine flood insurance claim and appeal activities." *See* AR 1076; AR 1297. Specifically, the Agency noted that "[BAC's] activities include requesting claim file/supporting documentation, conducting on-site/desktop reviews, researching issues, drafting decision memos following the [issue-rule-analysis-conclusion] format, supporting post-decisions communications, supporting adjustments or corrective actions, and monitoring and reporting active appeals/file suit." AR 1297. The Solicitation does not provide an explicit definition of what FEMA considers a "major subcontractor." *See* Pl.'s MJAR at 17; *see generally*, AR 80–149 (Solicitation). With respect to requiring a LOC for plaintiff's subcontractor, the Court cannot say that the Agency used a "significantly different basis" in its evaluation of major subcontractors that is inconsistent with the terms of the Solicitation. *NEQ*, 56 Fed. Cl. at 48 (citation omitted); *see also USFalcon Inc. v. United States*, 92 Fed. Cl. 436, 461 (2010) ("With no definition . . . to constrain the [Agency] and provide an objective standard for reviewing [its] decision, the Court cannot say that this determination is irrational."). Accordingly, the Court finds the Agency's determination consistent with the terms of the Solicitation.

3. Experience Requirement

Plaintiff further argues that FEMA's evaluation contravenes the terms of the Solicitation in assigning its proposal a weakness under Factor 1 (Relevant Prior Experience). Pl.'s MJAR at 18. As argued above, plaintiff disagrees with the Agency's decision to disregard BAC's experience because plaintiff did not submit a letter of commitment. As a result, the Agency assigned a weakness under Factor 1. Plaintiff bases its argument on the Solicitation's terms regarding Factor 4 (Past Performance), which states that an "[o]fferor will not be evaluated favorably or unfavorably if it lacks relevant past performance." AR 148. In response, defendant and defendant-intervenor argue that plaintiff "conflates experience and past performance . . . to

suggest that the Agency cannot downgrade experience" under Factor 1.  *See* Def.-Int.'s CMJAR at 22; *see also* Def.'s CMJAR at 18.

The Court is unconvinced by plaintiff's arguments.  Here, FEMA's evaluation of plaintiff's proposal is consistent with the terms of the Solicitation.  The Solicitation clearly states that the evaluation of Factor 1 is separate from Factor 4.  AR 148; *cf.* AR 141.  Moreover, this distinction is clear because the Solicitation defines Factor 1 (Relevant Prior Experience) and Factor 4 (Past Performance).  AR 141, 148.  Under Factor 1, offerors detail their experience addressing three components: (1) experience directly supporting the NFIP; (2) experience supporting the review, process, appeals of flood insurance claims; and (3) experience leading and implementing change management efforts.  AR 141.  In comparison, under Factor 4, offerors are evaluated on (1) quality of service provided, (2) cost control, (3) timeliness, (4) management, and (5) customer service.  AR 148.  Accordingly, the Agency treated these Factors as distinct and separate from one another in its evaluation.  For Factor 1, the Agency evaluated plaintiff and assigned a weakness because plaintiff did not provide a LOC for its subcontractor in order for the Agency to include the subcontractor's experience as part of plaintiff's proposal.  AR 1297.  For Factor 4, the Agency did not assign plaintiff's proposal a weakness for lacking relevant past performance.  Indeed, plaintiff received the highest rating under Factor 4, a rating of "High Confidence" from the Agency.  AR 1324.  Therefore, FEMA performed its evaluation in accordance with the terms of the Solicitation.

### E.     Arbitrary Evaluation and Rating

Plaintiff argues that FEMA made several errors in its evaluation.  Specifically, plaintiff argues that the Agency acted arbitrarily in its evaluation of Factor 1: (1) when it found no 'risks' or 'deficiencies' but still found flaws that 'increase[d]' the risk of unsuccessful contract performance"; (2) when it assigned strengths under Factor 2 for areas in which it found a weakness under Factor 1; and (3) when it provided no more than "a recitation of the definition of 'Some Confidence'" as its rationale for its Factor 1 evaluation.  Pl.'s MJAR at 18–20.  In response, defendant and defendant-intervenor argue that the Agency provided "reasoned, documented explanations for the challenged ratings" and that the Court should not "second guess" the Agency's discretionary determinations.  *See* Def.-Int.'s CMJAR at 24; *see also* Def.'s CMJAR at 20.

It is well-established that agencies "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process."  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  Therefore, procurement decisions "invoke[] 'highly deferential' rational basis review."  *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008).  Under that standard, the test is "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion."  *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 243 (2011) (citations omitted).  "This entails determining whether the agency entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or made a decision that was so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.* (citing *Ala. Aircraft Indus., Inc.-Birmingham v. United States*,

586 F.3d 1372, 1375 (Fed. Cir. 2009)).  Ultimately, plaintiff "bears a heavy burden of showing that the award decision had no rational basis."  *Id*. (citing *Domenico Garufi*, 238 F.3d at 1333).

The Court finds that the Agency provided a rational basis for its evaluation and ratings and that plaintiff's arguments amount to mere disagreement with the conclusions drawn by the Agency in evaluating plaintiff's proposal.  But it is not within this Court's power to "substitute its judgment for that of the [A]gency."  *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (citation omitted).  Here, FEMA has provided a robust and thorough explanation for its evaluation of plaintiff under Factor 1 (Relevant Prior Experience).  AR 1292–98 (Final Evaluation); *see also* AR 1286–92 (Initial Evaluation); AR 1326–42 (SSDD).  In the Technical Evaluation Consensus Report, the SSEB provided rationale for each of plaintiff's strengths and weaknesses in the context of Factor 1 and each subfactor.  *See* AR 1292–98.  Specifically, the SSEB examined the five projects presented by plaintiff and evaluated the relevancy of plaintiff's prior experience to the requirements of the Solicitation.  *See* AR 1292–98.  For example, Project 1 was considered relevant because it was "similar in scope to some tasks in the SOW such as supporting the claims task" and was "similar in complexity to the claims operation support (ex. providing accurate data for claims information and collection of claims information)."  AR 1293.  However, Project 3 was not considered relevant, and therefore was not considered, because "[a]lthough it relates to graphic visual data support, which is similar i[n] scope to tasks of supporting creating documents under SOW Part A: NFIP Program Support, it [did] not have similar complexity to any [section] of the SOW."  AR 1293.

The SSEB further evaluated plaintiff's prior experience under each subfactor of Factor 1 and described the specific strengths and weaknesses of plaintiff's proposal in meeting the SOW requirements and NFIP goals.  *See* AR 1292–98.  For example, when considering NFIP Goal 1 under subfactor 1, the SSEB assigned a significant weakness because "XLA was not clear in describing their experience with managing day to day operations and disaster operations simultaneously" and that "XLA may not be able to support SOW Part A Standard Operations and B Disaster Support during disaster season."  AR 1296.  When considering subfactor 3, the SSEB assigned a significant strength because plaintiff "demonstrated relevant prior experience with their work on a nearly $1B contract involving change management for the Center of Medicare and Medicaid Services (CMS)," which indicated a "significant strength due to the complexity of the work and size of the project."  AR 1297.

In the Source Selection Decision Document, the SSA provided a similar assessment of plaintiff's strengths and weakness for Factor 1 in terms of matching its prior experience against program goals.  *See* AR 1333–34.  In particular, the SSA noted that plaintiff received strengths for demonstrated prior experience by:

1) providing NFIP Subject Matter Experts with strong operational and implementation skills that were flexible within the NFIP's emerging processes and complex requirements (NFIP Goal #1),
2) supporting the NFIP with updating 100+ internal NFIP businesses process maps and SOPs (NFIP Goal #2),

    3)    leveraging FEMA ESW in developing an enterprise FIMA SharePoint solution to improve and support workflow and tracking performance to eliminate bottlenecks (NFIP Goal #3),

    4)    establishing relationships with stakeholders in FEMA Regional offices, FID Divisions, Adjusting Firms, WYOs, states, local communities, and the NFIP Direct. (NFIP Goal #4), and

    5)    working closely with the Office of Integration to support development, analysis, and compiling components for the reauthorization packet (NFIP Goal #5)

AR 1333. The SSA also considered that plaintiff had a significant weakness because "XLA was not clear in describing their experience with managing day to day operations and disaster operations simultaneously." The SSA further noted that "XLA was provided an opportunity to revise their submission during Discussions. However, XLA provided a response under a non-relevant project that was not [a] direct support of the NFIP as required by the solicitation, and consideration was not given for the project." AR 1333. The SSEB's and SSA's explanations in the Technical Evaluation Consensus Report and Source Selection Decision Document show that the Agency documented in detail its rationale and decision to assign plaintiff its strengths and weaknesses. *See* AR 1333–34; AR 1292–98.

    Further, the Agency's differing evaluations of Factor 1 (Prior Experience) and Factor 2 (Oral Presentation) remain consistent with the Solicitation as the factors are separate and distinct, each with different evaluation criteria. *See* AR 141–42. The Factor 1 evaluation focuses on an offeror's prior experience in supporting the requirements identified in the Statement of Work, while much of the Factor 2 evaluation focuses on how an offeror intends to support the requirements if awarded. *See* AR 141–42. Plaintiff argues that the Factor 1 and 2 evaluations should be consistent with each other because the Solicitation states that "[f]or Factors 1 and 2, the Government will holistically evaluate its confidence in the Offeror's ability to perform the work and make trade-off decisions." AR 149. However, in the context of the rest of the Solicitation, it is clear the Agency holistically evaluates Factor 1 across its respective subfactors, and Factor 2 across its own respective subfactors, rather than consider Factors 1 and 2 in combination. *See* AR 141–42. Thus, the Court finds nothing in the Administrative Record which would support finding the Agency's conclusions as arbitrary or capricious, an abuse of discretion or otherwise not in accordance with the law.

    **F.    Price Evaluations**

    Plaintiff contends that FEMA violated Federal Acquisition Regulation ("FAR") 15.404-1(b)(2)(ii) and FAR 15.505-1(b)(2)(v) in relying on Independent Government Cost Estimate ("IGCE") Labor Category rates for its price evaluation because the rates were established based on the historical cost of a predecessor contract that included several other services not in the scope of the current procurement. *See* Pl.'s MJAR at 24; AR 1347. Plaintiff further alleges FEMA ignored the variance in OST's proposed pricing in comparison to the IGCE rates, which should have put the Agency on "notice that the IGCE was not a valid basis for comparison." *See* Pl.'s MJAR at 24–26. In response, defendant and defendant-intervenor argue that the Agency was only required to perform a "fair and reasonable" price analysis, which was satisfied through adequate price competition. *See* Def.'s CMJAR at 22; Def.-Int.'s CMJAR at 34.

The Agency established a fair and reasonable price for the contract award through adequate price competition. The Agency can use "various price analysis techniques and procedures to ensure a fair and reasonable price," including "[c]omparison of proposed prices received in response to the [S]olicitation." Federal Acquisition Regulation 15.404-1(b)(2)(i) [hereinafter FAR]. As the Solicitation did not require the Agency to conduct a price realism analysis, AR 138–149, "adequate price competition establishes a fair and reasonable price." FAR 15.404-1(b)(2)(i). A price is based on adequate price competition when:

(A) Two or more responsible offerors, competing independently, submit priced offers that satisfy the Government's expressed requirement;
(B) Award will be made to the offeror whose proposal represents the best value where price is a substantial factor in source selection; and
(C) There is no finding that the price of the otherwise successful offeror is unreasonable.

FAR 15.403-1(c)(1)(i). Here, those requirements were met where both plaintiff and OST submitted independent offers to be evaluated for "best value," and there was no finding that either offeror's price was unreasonable. While plaintiff alleges that the Agency's use of IGCE rates was flawed, FEMA can do so to ensure a fair and reasonable price. *See* FAR 15.404-1(b)(2)(v); FAR 15.505-1(b)(3) (stating that other price analysis techniques, including IGCE rates, may be used if competitive proposed prices or previous contract prices are insufficient to determine if a price is fair and reasonable). Moreover, the IGCE rates used by the Agency were not just based off a historical contract, but also incorporated GSA's Contract Awarded Labor Category Tool and IGCE Labor Category details from the Bureau of Labor Statistics. AR 1347. As such, the Court finds the Agency's price evaluation consistent with the FAR and find plaintiff's concerns regarding the Agency's use of IGCE rates unpersuasive.

### G.   Best Value Evaluation

Plaintiff contends that FEMA departed from the terms of the Solicitation when the Agency "favored the lowest price over the superior solution, failed to consider XLA's past performance evaluation and superior technical evaluation overall, and considered XLA's technical and past performance factors independently" rather than "evaluat[ing] Factors 1 and 2 'holistically.'" Pl.'s MJAR at 29, 31–32. Defendant and defendant-intervenor argue that plaintiff simply disagrees with the Agency's evaluation results and that the Agency complied with the terms of the Solicitation and properly documented its decision. *See* Def.'s MJAR at 28; Def.-Int.'s CMJAR at 29.

Agencies have "substantial discretion to determine which proposal represents the best value for the government." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). Compared to other types of awards, the Court "accords contracting officers an even greater degree of discretion when the award is determined based on the best value to the agency." *Glenn Defense Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 908 (Fed. Cir. 2013). In reviewing an agency's best value choice of proposal, the Court defers to the agency's decision as

long as the decision is reasonable, "even if the [Court] itself might have chosen a different proposal." *Widnall v. B3H Corp.*, 75 F.3d 1577, 1580 (Fed. Cir. 1996).

Under a comprehensive review of the record, the Court finds FEMA's award to be reasonable. Much of plaintiff's argument challenges the lack of a cost-realism analysis where FEMA failed to find OST's proposed rates unreasonably low. *See* Pl.'s MJAR at 23–27. However, plaintiff has not demonstrated that a cost-realism analysis is required under the terms of this Solicitation for a best-value contract. *See* AR 138–149. While it is true that FEMA did not perform a cost-realism analysis, the Agency satisfied the Solicitation requirements through other methods, such as an IGCE comparison and adequate price competition. *See* AR 1344–49. Although plaintiff asserts that FEMA's best-value analysis is flawed, its arguments amount to mere disagreement with the Agency's judgment.

Further, the Administrative Record provides FEMA's explanation for its selection choice and demonstrates that the Agency made a rational decision regarding its best-value determination that comports with the terms of the Solicitation. *See* AR 1326–41; AR 1344–49. Following the relative order of importance of each factor, the SSA found OST's proposal represented the best value. AR 1341. Although FEMA rated plaintiff higher in Factor 2 and Factor 4, the SSA considered OST's rating in Factor 1 more important than plaintiff's rating in Factor 2 in accordance with the Solicitation. *See* AR 1340. While the SSA agreed that both offerors' prices were fair and reasonable, it found plaintiff's price premium over OST's proposal significant and not warranted given the order of importance of the evaluation factors under the Solicitation. *See* AR 1338, 1340. Additionally, and as described above, the Agency holistically evaluated Factor 1 across its respective subfactors, and Factor 2 across its own respective subfactors, rather than considering Factors 1 and 2 in combination. *See* AR 141–42. Therefore, the Court finds that the Agency's documentation of its trade-off analysis demonstrates a proper exercise of discretion within the terms of the Solicitation.

### H.     Prejudice and Injunctive Relief

This Court is generally loath to "disturb a best-value award so long as the agency 'documents its final award decision and includes the rationale for any business judgments and tradeoffs made.'" *Afghan Am. Army Servs. Corp. v. United States*, 90 Fed. Cl. 341, 360 (2009) (quoting *Blackwater Lodge & Training Ctr. v. United States*, 86 Fed. Cl. 488, 514 (2009)) (citation omitted). So long as there exists a "rational connection between the facts found and the choice made," the Court will not set a procurement decision aside. *Banknote Corp. of Am.*, 56 Fed. Cl. at 390 (quoting *Motor Vehicle Mfrs. Ass'n v. State farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). As the Court is not persuaded by plaintiff's contentions that the Agency conducted a flawed evaluation and award, the Court does not believe that plaintiff was prejudiced by such alleged procurement flaws.

Finally, plaintiff alleges that it is entitled to permanent injunctive relief. Pl.'s MJAR at 35–37. When analyzing whether a permanent injunction is proper, a court must analyze "whether, as it must, the plaintiff has succeeded on the merits of the case." *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004). As the plaintiff has not succeeded on the merits of its case, the Court will not grant an injunction.

### IV.     Conclusion

     For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is hereby **DENIED**.  Defendant's and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record are hereby **GRANTED**.  The Clerk is directed to enter judgment in favor of defendant and defendant-intervenor, consistent with this opinion.

**IT IS SO ORDERED.**

                                             s/ *Loren A. Smith*
                                             Loren A. Smith
                                             Senior Judge